IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HARD DRIVE PRODUCTIONS, INC., <br> *Plaintiff*, <br><br> vs. <br><br> DOES 1 – 59, <br> *Defendant*. | § <br> § <br> § Civil Action No. 4:12-cv-00699 <br> § <br> § <br> § <br> § <br> § |

**RESPONSE TO PLAINTIFF'S STATUS REPORT
AND NOTICE OF ACTIVITY IN THE DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA RELATING TO THIS CASE**

Third Parties Comcast Cable Communications LLC ("Comcast") and Cequel III Communications II, LLC ("Cequel") file this response to Plaintiff Hard Drive Productions, Inc.'s ("Hard Drive") July 9, 2012 Status Report (Dkt. 9) and notify the Court of the following:

(i) Hard Drive's improper issuance of subpoenas out of the District Court for the District of Columbia ("DC District Court") to obtain identifying information for Texas subscribers named as Doe defendants in this Southern District of Texas case;

(ii) A recent Memorandum Opinion and corresponding Order in which the DC District Court rejected the discovery tactics employed by Millennium TGA, identical to the ones employed by Hard Drive and hard Drive's co-counsel in this case; and

(iii) Comcast's and Cequel's objections to Hard Drive's subpoenas in the DC District Court and the general impropriety of Hard Drive's tactics.

A. **Contrary to this Court's expectations in its order granting limited *ex parte* discovery, Hard Drive issued its subpoenas out of the DC District Court.**

1. Hard Drive is an Arizona corporation which produces pornographic films. Hard Drive filed the instant copyright infringement action alleging that certain unknown defendants, identified as Does 1 – 59, infringed its copyright in the adult film "Amateur Allure – Lola Foxx" (the "Film") by distributing and downloading unauthorized copies or excerpts over the Internet

1

via the BitTorrent file sharing protocol. (*See* Dkt. 1, Compl. ¶¶ 1, 3). Hard Drive then moved immediately, *ex parte*, to take expedited discovery.

2. On March 30, 2012, this Court issued its Memorandum and Order ("Order") ruling on Hard Drive's *ex parte* motion. The Court granted "limited expedited discovery," requiring that several internet service providers ("ISPs") release certain identifying information regarding the Doe defendants pursuant to a protective order that would allow the Doe defendants and the ISPs to be heard before the information is disclosed to Hard Drive. (Dkt. 5 at 2). The Court further stated that the Doe defendants "may file any motions **with this court** contesting the subpoena." (Dkt. 5 at 4) (emphasis added).

3. By noting that the Doe defendants may file their motions "with this court," it is evident that the Court expected the subpoenas to be issued from the Southern District of Texas, not a distant federal court. *See* FED. R. CIV. P. 45(c)(1), (3) (requiring that motions related to a subpoena's burden or expense, or to quash or modify, must be resolved by the court issuing the subpoena).[1] Hard Drive, nevertheless, issued its subpoenas out of the DC District Court. *See* Exhibit A, Subpoena to Comcast; Exhibit B, Subpoena to Cequel. Hard Drive offers no justification for doing so, and its decision is especially curious given that the Doe defendants appear to all reside in Texas–the venue where this case is pending.

**B. The DC District Court has rejected Hard Drive's tactics, concluding that they amount to "judge shopping."**

4. In a similar pornographic copyright infringement lawsuit pending in the Southern District of Texas, plaintiff Millennium TGA—represented by the same co-counsel as Hard Drive—also issued its subpoenas out of the DC District Court. After Comcast objected and

---

[1] *See also, Millennium TGA, Inc. v. Comcast Cable Communications, LLC*, 2012 WL 2371426 at *5 (D.D.C. June 25, 2012) and *Dow Chemical Canada, Inc. v. HRD Corp.*, 2010 WL 2680641, *3 (S.D. Tex. 2010), both citing *In re Sealed Case*, 141 F.3d 337, 343 (D.C. Cir. 1998).

Millennium TGA moved to compel, the DC District Court found that Millennium TGA's subpoena tactics caused considerable confusion, undue burden and territorial inconvenience. *Millennium TGA, Inc. v. Comcast Cable Communications, LLC*, --- F.Supp.2d ---, 2012 WL 2371426 at *5, 6 (D.D.C. June 25, 2012) (hereafter referred to as "*Millennium TGA III*,"). Moreover, that counsel's overall strategy amounted to "judge-shopping." *Id.* at *3. The Court denied the motion to the extent it sought personally identifying information. *Id.* at *7. A true and correct copy of the Memorandum Opinion and Order in *Millennium TGA III* is attached as Exhibit C.

5. In *Millennium TGA III*, the plaintiff originally filed suit in the DC District Court, but immediately dismissed the case after it was randomly assigned to the Honorable Robert Wilkins, as he had imposed restrictions on discovery in a similar pornographic copyright case. *Id.* at *1. Four days later, the plaintiff refiled essentially the identical case in the Southern District of Texas, moved for expedited discovery, yet issued the subpoenas from the DC District Court. *Id.* In violation of the district court's local rules, the plaintiff did not notify the court of its previous lawsuit and the subpoena matter was therefore randomly assigned to the Honorable Ellen Segal Huvelle. *Id.* at *2. After Judge Huvelle considered Comcast's Notice of Related case and Request for Reassignment, she reassigned the case back to Judge Wilkins. *Id.*

6. After reassignment, the court denied the plaintiff's motion to compel Comcast to comply with the subpoena and criticized the plaintiff's decision to engage in "one stop shopping" in the District of Columbia. *Id.* at *5. The court went on to determine that plaintiff's approach did not comply with the "affirmative duty pursuant to Rule 45 to take 'reasonable steps' to avoid undue burden and territorial inconvenience to the 348 (among 351 total) subscribers residing

outside of the District of Columbia." *Id.* In analyzing the territorial burden on the parties, the court noted that such tactics amount to an "abuse of subpoena" and quoted as follows:

> abuse of process occurs when a party manipulates the circumstances to serve process in an inconvenient forum for the persons who must respond, even if it is technically legal to proceed in that forum because 'such trickery and cunning [is] 'degrading to an honorable profession, and well calculated to bring the administration of justice into reproach and contempt . . ..'

*Id.* (quoting *Board of Ed. v. Farmingdale Classromm Teach. Ass'n.*, 343 N.E.2d 278 (N.Y. 1975). Ultimately, the DC District Court ordered Comcast to provide *only* city and state information for the Doe defendants and not any information that would specifically identify any subscriber. *Id.* at *7. The plaintiff would then need to file cases in the districts where the subscribers reside and issue subpoenas from those same districts, ordering:

> The Plaintiff can then bring an action against the John Does linked to each of those 351 Comcast subscribers in each of the judicial districts where they reside, and Plaintiff can then serve a subpoena upon Comcast to obtain the identifying information for any subscriber in each of the judicial districts where the subscribers reside (which is also where any action against any Doe defendant linked to any particular subscriber would be pending).

*Id.* The DC District Court correctly admonished the tactics employed by Millennium TGA, and Hard Drive and its co-counsel should not be permitted to engage in similar tactics in this case and before this Court.[2]

---

[2] Additional confusion and burden is placed on the nonparty subscribers when attempting to reconcile this Court's Order that motions related to the subpoena be filed "in this court" with Rule 45's mandate that such motions be decided only by the issuing court, *i.e.*, the DC District Court. *See e.g., Millennium TGA III* at *5 (discussing the burden and confusion caused to subscribers resulting from this issue).

    **C.**    **Comcast and Cequel have objected to Hard Drive's subpoenas in the District Court for the District of Columbia.**

    7.    Comcast and Cequel were each served with Hard Drive's subpoenas out of the DC District Court requesting names and addresses of their subscribers. *See* Exhibits A, B. Comcast and Cequel timely objected to Hard Drives' subpoenas on a number of grounds, including the following:

(i)    Hard Drive's attempt to mislead and confuse subscribers by issuing the subpoenas out of the DC District Court rather than the Southern District of Texas;

(ii)    Hard Drive's failure to obtain a valid court order authorizing disclosure of subscribers' identifying information as required by 47 U.S.C. § 551(c);

(iii)    Hard Drive's failure to provide sufficient time for Comcast and Cequel to provide its subscribers with the statutorily required notice of the subpoena before turning over any records containing identifying information;

(iv)    Hard Drive's failure to adequately compensate Comcast and Cequel for the time and labor necessary to produce the requested information and comply with the statutory safeguards; and

(v)    Hard Drive's failure to comply with the rules for proper joinder. Courts have repeatedly and resoundingly held that the alleged use of BitTorrent technology does not satisfy the requirements for permissive joinder. As noted by this Court, "[w]hether Does 2-59 are properly joined under Federal Rule of Civil Procedure 20(a) is questionable." Numerous courts have held that the rules for joinder of Doe defendants and/or their alleged co-conspirators—such as alleged in this proceeding—cannot be satisfied in the underlying action by a subpoena seeking to identify the extra-territorial and improperly joined owners of IP addresses as it is not reasonably calculated to lead to the discovery of evidence relevant to the pending claims. FED. R. CIV. P. 26(b)(1) and 45. Indeed, in the present case, the lack of proper joinder is evident on the face of the exhibit attached to Hard Drive's complaint, which reflects that the alleged illegal activities of the different IP addresses occurred on different days and times over a ***three month*** time period.[3]

---

[3] *See, e.g., Patrick Collins, Inc. v. John Does 1-23*, Case No. 11-cv-15231, at *6 (E.D. Mich. Mar. 26, 2012) ("The nearly three month time span covering this activity suggests the likely possibility that there was never common activity linking the 23 addresses in this matter."); *K-Beech, Inc. v. John Does 1-41*, No. V-11-46, 2012 U.S. Dist. LEXIS 31803, *10 (S.D. Tex. Mar. 8, 2012) ("While [plaintiff] provides the precise date, hour, minute and second at which it alleges that each Doe Defendant was observed to be sharing the torrent of the copyrighted work, [plaintiff] does not indicate how long each Doe Defendant was in the swarm or if any of the Doe Defendants were part of the swarm

*See* Exhibit D, Comcast's June 1, 2012 Objection letter; Exhibit E, Cequel's June 5, 2012 Objection letter.

  8. Expedited discovery is not appropriate where, as here, the underlying action is defective and Hard Drive seeks to deliberately avoid this Court's review of the discovery by issuing subpoenas in remote districts. Taken together with the propensity for settlements and dismissals of these types of actions, this Court may not have the chance to ever consider the difficult issues of joinder and jurisdiction presented in this case. Another court examining the "economics" of pornographic copyright infringement lawsuits analyzed it accurately as follows:

> The Court is familiar with lawsuits like this one. These lawsuits run a common theme: plaintiff owns a copyright to a pornographic movie; plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if successful, plaintiff will send out demand letters to the Does; because of embarrassment, many Does will send back a nuisance-value check to the plaintiff. The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps. The rewards: potentially hundreds of thousands of dollars. Rarely do these cases reach the merits.
>
> The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial. By requiring Malibu to file separate lawsuits for each of the Doe Defendants, Malibu will have to expend additional resources to obtain a nuisance-value settlement—making this type of litigation less profitable. If Malibu desires to vindicate its copyright rights, it must do it the old-fashioned way and earn it.

*Malibu Media, LLC v. Does 1-10*, No. 2:12-cv-03623 (C.D. Cal. June 27, 2012) (internal citations omitted). Hard Drive should not be allowed to profit from unfair litigation tactics

---

contemporaneously."); *Raw Films, Ltd. v. Does 1-32*, 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) (stating that the "differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert"); *Raw Films, Ltd. v. Does 1-32*, 2011 WL 6182025 at *2 (E.D. Va. 2011) (conduct over a three month time span was "insufficient to meet the standards of joinder set forth in Rule 20").

whereby it uses the offices of the Court as an inexpensive means to gain Doe defendants' personal information[4] and perpetuate its "extortion scheme."

For the foregoing reasons, Third Parties Comcast and Cequel respectfully submit this response to the Court.

Dated: July 12, 2012

Respectfully submitted,

_____
Thomas M. Gregor
State Bar No. 24032245
Federal Bar No. 32190

*Attorney-in-charge for Comcast and Cequel*

Of counsel:

**OGDEN, GIBSON, BROOCKS, LONGORIA & HALL, LLP**
1900 Pennzoil South Tower
711 Louisiana Street
Houston, TX 77002
(713) 844-3010

John D. Seiver
Leslie G. Moylan
Lisa B. Zycherman
**DAVIS WRIGHT TREMAINE LLP**
1919 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
(202) 973-4200

---

[4] *See, e.g., In Re BitTorrent Adult Film Copyright Infringement Cases*, No. 2:11-cv-03995, at *22-23 (E.D.N.Y. May 1, 2012), quoting *K-Beech, Inc. v. John Does 1-41*, 2012 WL 773683, at *5 (S.D. Tex. 2012) (holding that "[p]ostponing a determination on joinder in these cases 'results in lost revenue of perhaps millions of dollars (from lost filing fees) and only encourages plaintiffs in copyright actions to join (or misjoin) as many doe defendants as possible.'"); *Pacific Century Int'l v. John Does 1-37, et al.*, 2012 WL 1072312, at *3 (N.D. Ill. Mar. 30, 2012) (holding that these pornographic copyright infringement lawsuits deny the federal courts additional revenue from filing fees in the suits that should be filed to obtain the information the plaintif[f] desire[s]."); *MCGIP, LLC v. Doe*, No. 11 C 2331, 2011 WL 4352110, at *4 n.5 (N.D. Cal. Sept. 16, 2011).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of July 2012, true and correct copies of the foregoing document was served via ECF and U.S. Mail upon all counsel of record:

_____
Thomas M. Gregor